IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| J2 GLOBAL COMMUNICATIONS, INC. § <br> § <br> V. § <br> § <br> PROTUS IP SOLUTIONS, INC., § | | CIVIL ACTION NO. 6:08-CV-211 |
| J2 GLOBAL COMMUNICATIONS, INC. § <br> § <br> V. § <br> § <br> CAPTARIS INC. § | | CIVIL ACTION NO. 6:08-CV-262 |
| J2 GLOBAL COMMUNICATIONS, INC. § <br> § <br> V. § <br> § <br> EASYLINK SERVICES § <br> INTERNATIONAL CORPORATION, § | | CIVIL ACTION NO. 6:08-CV-263 |
| J2 GLOBAL COMMUNICATIONS, INC. § <br> § <br> V. § <br> § <br> COMODO GROUP, LTD., et al. § | | CIVIL ACTION NO. 6:08-CV-275 |

**MEMORANDUM OPINION AND ORDER**

On May 29, 2008, Plaintiff j2 Global Communications, Inc. ("j2") filed a complaint against Protus IP Solutions ("Protus"). On June 26, 2008, j2 filed separate complaints against Captaris, Inc. ("Captaris"), and Easylink International Corporation ("Easylink"). On June 30, 2008, j2 filed a complaint against Comodo Group, Ltd. and Comodo Communications, Inc. ("Comodo"). (Referred to collectively as "Defendants.") In all four cases, j2 alleges infringement of U.S. Patent Nos. 6,597,688 ("the '688 Patent") and 7,020,132 ("the '132 patent"). Each Defendant has now filed a

Motion to Transfer Venue. (Doc. Nos. 23, 22, 17, 17, respectively.) Because the issues are substantially the same, the Court issues this Memorandum Opinion and Order for all four cases.

For the following reasons, Defendants' Motions to Transfer are **DENIED**.

## BACKGROUND

j2 is currently involved in several patent infringement suits against different defendants in the Central District of California (the "California j2 cases") and the Eastern District of Texas (the "Texas j2 cases"). j2 began filing the California j2 cases in 2004; they involve the '688 patent as well as U.S. Patent Nos. 6,350,066 ("the '066 patent"), 6,208,638 ("the '638 patent"), and 6, 564,321 ("the '321 patent"). j2 began filing the Texas j2 cases in 2008; they involve the '688 patent and the '132 patent. Both sets of cases are currently pending, but the California j2 cases are stayed pending reexamination of the '066 patent and the '638 patent. The '688 patent is the only patent at issue in both the California j2 cases and the Texas j2 cases.

This litigation began on February 20, 2004, when j2 and its wholly-owned subsidiary Catch Curve, Inc. ("Catch Curve") filed suit against Venali, Inc. ("Venali") before the Honorable Dean D. Pregerson in the Central District of California, (the "j2/Venali Action"). j2 alleged infringement of the '688 patent as well as the '066 patent, the '638 patent, and the '321 patent. Catch Curve alleged infringement of several of its patents. Soon afterwards, j2 and Catch Curve filed the rest of the California j2 cases against other defendants, including Protus. All of these cases were assigned to Judge Pregerson.

In the j2/Venali Action, a *Markman* hearing was scheduled and the parties submitted their claim construction briefs. Before the hearing was to be held, Venali requested reexamination of the '688, '066, and '638 patents. On January 13, 2006, Judge Pregerson issued a stay pending

completion of the PTO reexaminations for all of the California j2 cases. Because j2 and Catch Curve owned different patents covering different inventions, Judge Pregerson allowed Catch Curve to dismiss itself from the California j2 cases and file separate lawsuits to avoid the stay (the "Catch Curve cases"). Judge Pregerson has since construed some of the Catch Curve patents.

On March 11, 2008, the PTO completed reexamination of the '688 patent and confirmed the patentability of all claims. Two weeks later, the PTO issued the '132 patent, which was a continuation of the '688 patent. Soon afterwards, j2 started filing the Texas j2 cases. It began by filing a complaint against Protus on May 29, 2008. On June 16, 2008, Protus requested reexamination of the '321 patent, which is at issue in the California j2 cases (but not the Texas j2 csaes). Until then, the '321 patent had not been reexamined and was not a basis for the stay in the California j2 cases. j2 filed complaints against Easylink and Captaris in this District on June 26, 2008 and against Comodo in this District on June 30, 2008.

The Defendants in all four cases have now moved to transfer these cases to the Central District of California where the California j2 cases and the Catch Curve cases are currently pending. Defendants contend that venue is more convenient in the Central District of California because Judge Pregerson is already familiar with the '688 patent. j2 responds that, Judge Pregerson's experience with the '688 patent is limited because, besides implementing the stay, he has had little substantive involvement with the California j2 cases, and he never construed any of the patents at issue in those cases. j2 also argues that, if these cases are transferred to the Central District of California, they may be stayed for an additional extended period of time due to Protus' recent request to reexamine the '321 patent at issue in the California j2 cases. Finally, j2 points out that the reexamination of the '688 patent is complete, with the claims confirmed, and that if these cases were stayed, j2 would be

3

unable to assert infringement simply because another non-asserted patent is being reexamined.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1] *See* 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001); *Mohamed v. Mazda Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2000). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315.(5th Cir. 2008). The moving party must show that transfer is "clearly more convenient." Otherwise, a plaintiff's choice of venue must be respected. *Id.*

When deciding whether to transfer venue, a district court balances two categories of interests: (1) the private interests, *i.e.*, the convenience of the litigants, and (2) the public interests in the fair and efficient administration of justice. *Id.* at *8. The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public

---

[1] The first question a court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404 is whether the suit could have been filed originally in the destination venue. There is no dispute that these cases could have been filed in the Central District of California.

interest factors include: "(1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* None of the factors are dispositive on their own. *Id.*

## DISCUSSION

### I.  The Private Interest Factors

The private interest factors weigh against transfer in these cases. Defendants have not offered any specific examples of documents or other evidence which are located in the Central District of California, so the first private interest factor weighs against transfer. Defendants have not demonstrated any need for compulsory process in California to secure witnesses, so the second factor weighs against transfer. With regard to the third and fourth factors, Defendants point out that j2's principal place of business is in California, Easylink's principal place of business is in Georgia, and Captaris' principal place of business is in Washington. However, the Court presumes that the parties will be able to make their employees available to testify if necessary. The Court further presumes that this district is the most convenient forum for j2 because it filed here. *See ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-cv-396, 2005 WL 366966 at *4 (E.D. Tex. Feb. 16, 2005). Defendants have specified that one potential non-party witness, one of the inventors of the patents in suit, resides in the Central District of California, but j2 counters that the other inventor resides in Washington D.C. Because the Eastern District of Texas is roughly equidistant between California and Washington D.C., this District would seem to be a more convenient location than California. Thus, factors three and four weigh against transfer. Overall, the private interest factors weigh against

transferring these cases to the Central District of California.[2]

## II.     The Public Interest Factors[3]

The bulk of the parties' dispute focuses on the public interest factors. In a patent case, these factors may be determinative even if the parties' considerations call for a different result. *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). In particular, judicial economy may favor transfer to a court that is already familiar with the technology and issues involved. *Id.*

Defendants argue that j2 should not be permitted to litigate two cases involving the same patent in two different Districts at the same time. It claims that this situation could waste judicial resources and create the potential for inconsistent claim constructions. It cites a number of cases for support: *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005); *Interactive Music Tech., LLC v. Roland Corp., U.S.*, No. 6:07-cv-282, 2008 WL 245142 at *10 (E.D. Tex. Jan. 29, 2008); *Logan v. Hormel Foods Corp.*, No. 6:04-cv-211, 2004 WL 5216126 at *2 (E.D. Tex. Aug. 25, 2004). In response, j2 contends that these cases are more like

---

[2] Captaris asks the Court to transfer this case to the Western District of Washington, or in the alternative, transfer it to the Central District of California. The arguments Captaris offers in support of transferring this case to Washington are essentially the same as those offered above, *i.e.* Captaris is a Washington based company and it anticipates that many documents and witnesses will be located in Washington. As with the other Defendants, Captaris has not pointed to specific documents, evidence, or non-party witnesses located in Washington, nor demonstrated any need for compulsory process. In fact, the Defendants raise much stronger arguments for transferring these cases to California rather than Washington. Because the Court finds that transfer to the Central District of California is inappropriate, the Court finds that transfer to the Western District of Washington would be even less appropriate.

[3] Defendants also allege that transfer is appropriate pursuant to the first-to-file rule. This rule rests on principles of comity and sound judicial administration. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). When the issues raised by two related actions simultaneously pending before two different federal courts substantially overlap, the court in which the later action was filed may refuse to hear it. *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-cv-29, 2008 WL 18363384 at *4 (E.D. Tex. Apr. 22, 2008). The analysis involved with the public interest factors below is effectively the same as the analysis called for under the first-to-file rule in these cases.

*ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-cv-396, 2005 WL 366966 at *4 (E.D. Tex. Feb. 16, 2005) and *Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-cv-358, 2004 WL 1635534 at *3 (E.D. Tex. May 26, 2004). The cases cited by the parties demonstrate that Motions to Transfer Venue require fact intensive analysis.

In *Logan*, the Plaintiff filed two actions in separate districts alleging infringement of the same patent against different defendants. In the earlier-filed case, the Court issued an exhaustive claim construction, but the case settled just prior to trial. 2004 WL 5216126 at *1. Because that case settled prior to final judgment, the Court in the later-filed case would have to perform its own claim construction. The Court determined that there was no reason to duplicate the work of the Court in the earlier filed case, and that doing so would risk inconsistent claim constructions. Thus, the Court found that transfer was appropriate. *Id.* at *2.

*ConnecTel LLC* was decided six months after *Logan* and involved substantially similar facts. 2005 WL 366966 at *1. The primary difference between the two cases is that, in *Logan*, the transferee Court issued an exhaustive claim construction on the patent at issue, whereas in *ConnecTel*, the transferee Court had only construed two terms of one of four patents at issue. Accordingly, the Court distinguished *Logan* and denied the Motion to Transfer. *Id.* at *4.

In *Zoltar Satellite Systems, Inc*, the Plaintiff filed a separate action in this District alleging infringement of three out four patents which were at issue in a pending California case. 402 F. Supp. 2d at 734. The California Court had issued a claim construction, presided over a three week trial, and entered a judgment of non-infringement. When Defendant filed a Motion to Transfer Venue in the Texas case, several counterclaims were still before the California Court. *Id.* Because the California

Court had already construed three out of the four patents, and was intimately familiar with the relevant technology, the Texas Court determined that denying the Motion to Transfer would require the Court to engage in duplicative and unnecessary work. *Id.* at 737.

In *Cummins-Allison Corp.*, the plaintiff sued the defendant alleging infringement of three patents in the Northern District of Illinois. 2004 WL 1635534 at *1. During discovery, the plaintiff learned of additional claims and sought to amend its complaint to add three more patents to the suit. The Illinois Court denied the plaintiff's Motion to Amend. The plaintiff then filed a new action in this District alleging infringement of the three new patents. Later, the defendant filed a new action seeking declaratory judgment of non-infringement in the Northern District of Illinois, and filed a Motion to Transfer the Texas case to Illinois. *Id.* The Illinois Court left it to this Court to determine which case should be transferred. Because all six patents involved similar claim terms, the Court noted the risk of inconsistent claim constructions. Nonetheless, it determined that venue should not be transferred to Illinois because the two actions involved different patents. The Court discouraged the parties from duplicating discovery in the two cases, and thus concluded that transfer would not increase judicial efficiency. *Id.* at *3.

*Interactive Music Technology, LLC* presented a factually unique situation. In that case, the plaintiff filed a patent infringement suit in this District against three defendants. One of those defendants had signed a settlement agreement with the plaintiff, which required the parties to litigate disputes arising out of the settlement agreement in California. 2008 WL 245142 at *1-2. After determining that the instant dispute involved intensive interpretation of the settlement agreement, the Court transferred the case to California. *Id.* at *11. The Court transferred all three Defendants because otherwise two separate Courts would be involved in simultaneous parallel litigation of the

8

same claims of the same patents. *Id.* The Court also considered the fact that the plaintiff chose to involve all three defendants in a single lawsuit. *Id.*

As the cases above illustrate, a court must consider the extent to which transfer will increase judicial economy and lower the risk of inconsistent adjudication. If the overlap between cases is substantial, then transferring the cases to a single judge may increase judicial economy and decrease the risk of inconsistent claim constructions. For example, transfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar defendants with the same or similar products. *Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d at 737; *Logan*, 2004 WL 5216126 at *2. On the other hand, if the overlap between cases is small then the risk of duplicative judicial work and inconsistent claim constructions is also small. This is particularly true when a court has had limited involvement with the case and the technology, no claim construction opinion has issued, and the cases involve different defendants with different products. *ConnecTel, LLC*, 2005 WL 366966 at *4; *Cummins-Allison Corp.*, 2004 WL 1635534 at *3 At all times, the burden falls on the party seeking transfer to show that transfer is "clearly more convenient." *In re Volkswagen of America, Inc.,* 545 F.3d at 315.

In these cases, Defendants allege that the overlap between these cases and the j2/Venali action is substantial. They note that both cases involve the '688 patent. They contend that Judge Pregerson is familiar with the technology at issue because he already received claim construction briefs in the j2/Venali action and he has construed some of the Catch Curve patents. j2 counters that the '688 patent is just one of the four patents at issue in the California j2 cases, and that Judge Pregerson has not construed any of the patents involved in those cases. It argues that the Catch Curve

9

cases are irrelevant because they involve different patents, different defendants, and a different plaintiff.

The Court finds that Defendants have failed to show that transfer is necessary to preserve judicial economy or prevent inconsistent claim constructions. Judge Pregerson has not construed any of the patents in the California j2 cases. Thus, unlike in *Logan* and *Zoltar*, the Court cannot conclude that Judge Pregerson is "intimately familiar" with the technology at issue or that he has issued an "exhaustive" claim construction order. *Cf. Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d at 737; *Logan*, 2004 WL 5216126 at *2. At most, Defendants have shown that potentially relevant claim construction briefs were filed in Judge Pregerson's Court almost three years ago. Other than ordering the stay, there is no indication that Judge Pregerson had substantial involvement with the j2 California cases either prior to or after the implementation of the stay. Judge Pregerson has construed some patents in the Catch Curve cases, but Defendants have not shown that these cases involve patents similar to the '688 patent. On the contrary, the fact that Judge Pregerson did not stay the Catch Curve cases along with the California j2 cases strongly implies that the two groups of cases involve substantially different patents.[4]

Unlike in *Interactive Music Technology*, at this time, there is no risk of simultaneous parallel litigation involving the exact same patents. *cf.* 2008 WL 245142 at *11. The claim construction hearing in all four cases is set for September 2009 and trial is set for May 2010. Because the California j2 cases are currently stayed, and could continue to be stayed for an extended period of time, there is little risk of parallel competing claim constructions. These cases may proceed to final

---

[4] Defendants argue that j2 is trying to avoid Judge Pregerson because he granted summary judgment in one of the Catch Curve cases. Because Defendants have failed to show that the Catch Curve cases involves similar claim terms, technology, or legal issues, the Court finds this argument to be unpersuasive.

judgment before the stay is lifted and Judge Pregerson has a chance to construe the '688 patent.

Transferring these cases will only produce minimal gains in judicial efficiency because Defendants have demonstrated only the potential for overlap between these cases and the California j2 cases. *See ConnecTel, LLC*, 2005 WL 366966 at *4; *Cummins-Allison Corp.*, 2004 WL 1635534 at *3. Defendants have not shown that similar claim terms are at issue, that similar products are at issue, or that Judge Pregerson has had extensive involvement with the technology or issues involved in these cases. In fact, these cases involve different defendants[5] and only one of the four patents involved in the California j2 cases. If some overlap does arise, the Court can take appropriate action to minimize the risk of judicial inefficiency and inconsistent claim construction by consulting Judge Pregerson's Orders in the California j2 cases. Accordingly, the concern for judicial economy weighs against transferring these cases to the Central District of California.

With regard to the rest of the public interest factors, the first and second factors are neutral or weigh against transfer because both this Court and the Central District of California are relatively efficient with patent cases and both Courts have equivalent local interests in the resolution of these cases. *Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d at 737. Captaris claims that the state of Washington has a greater local interest in the resolution of that case because Captaris is a Washington based company and the center of the allegedly infringing activity is in Washington. This Court has routinely rejected this sort of argument in patent cases. When a company sells allegedly infringing products, or offers allegedly infringing services, nationwide, "no specific locality has a dominant interest in resolving the issue of [patent infringement]." *Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d

---

[5]Protus is involved in one of the j2 California cases. Nonetheless, Protus has not shown that the same or similar products will be at issue in both this case and the California case.

at 737; *see also Cummins-Allison Corp.*, 2004 WL 1635534 at *6; *Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07-cv-355, 2008 WL 819956 at *8 (E.D. Tex. Mar. 25, 2008). Captaris cites *In re Volkswagen* for support, but the specific fact pattern in that case is distinguishable. *See* 545 F.3d at 318. *In re Volkswagen* was a products liability case involving an automobile collision in Dallas. *Id.* at 307. After noting that the residents of Dallas had extensive connections to the event giving rise to the lawsuit, the Fifth Circuit found that this factor weighed in favor of transfer. *Id.* at 318. Because Captaris does not dispute that it offers allegedly infringing services nationwide, there is no comparable event in a single district, which gave rise to this case. Thus, the analysis of *In re Volkswagen*, with regard to the localized interest factor, is inapplicable. *Aloft Media, LLC*, 2008 WL 819956 at *8.

The third factor is neutral because both Courts are equally familiar with patent law. *Zoltar Satellite Sys., Inc.*, 402 F. Supp. 2d at 737. As in most patent cases, the fourth factor is inapplicable. *See id.* at 738. Thus, the Court finds that Defendants have not met their burden of showing that transfer in these cases would be "clearly more convenient." *In re Volkswagen of America, Inc.,* 545 F.3d at 315.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Transfer Venue are **DENIED**.

**So ORDERED and SIGNED this 23rd day of December, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE